[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14482
Non-Argument Calendar
_____

D.C. Docket No. 6:11-cr-00206-GAP-GJK-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

KENNETH L. HARRIS,
a.k.a. Kenneth Leander Harris,

Defendant - Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 28, 2014)

Before CARNES, Chief Judge, HULL and MARCUS, Circuit Judges.

CARNES, Chief Judge:

Kenneth Harris was convicted of three counts of Hobbs Act robbery and four other counts relating to his possession and use of firearms during those robberies.  Because he had prior convictions for other violent crimes, he was sentenced to life imprisonment and consecutive prison terms totaling 57 years.  Harris appeals his sentence, arguing that imposing a mandatory life sentence without a finding by the jury as to the fact of his prior convictions is inconsistent with Alleyne v. United States, 133 S.Ct. 2151 (2013).  He also challenges the constitutionality of 18 U.S.C. § 3559(c) and 21 U.S.C. § 851, which provide for the imposition of mandatory life sentences for persons convicted of certain felonies, on the ground that they impermissibly remove sentencing discretion from the courts and delegate it to the executive branch.

## I.

Harris was released from Florida state prison in 2008.  He had been in prison for nearly sixteen years for committing numerous armed robberies in central Florida, but the time served did not have its intended effect.  Just a year after his release, Harris was back at it — he robbed a local video games store four times over the course of a seven-month period.  In each of these robberies, he used a gun and threatened to kill store employees.  On two occasions, he discharged his weapon.  During the May 6, 2009 robbery he fired a bullet in an employee's direction, narrowly missing the employee's head, and during the December 21,

2009 robbery, he shot an employee in the leg.  Harris was later arrested for and charged with these crimes.

The indictment charged: four counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) and (b); four counts of using and carrying a firearm during those robberies, in violation of 18 U.S.C. § 924(c)(1)(A); and two counts of being a felon in possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e)(1).  Following a three-day trial, the jury was unable to reach a verdict on three of the counts[1] but convicted him of seven counts — three for Hobbs Act robberies, three for using a firearm during those robberies, and one for being a felon in possession of ammunition.  The government, seeking a mandatory life sentence under 18 U.S.C. § 3559(c), had filed the required information under 21 U.S.C. § 851, averring that Harris previously had been convicted of one felony that qualified as a serious drug offense and seven felonies that qualified as serious violent felonies under § 3559(c).

Harris' presentence investigation report calculated a base offense level of 20 for the first robbery and related offenses under United States Sentencing Guidelines § 2B3.1(a), to which it added a 4-level enhancement under § 2B3.1(b)(3)(B) because a victim was shot in the leg.  For the second and third robberies and related offenses, Harris' base offense level was 20 under § 2B3.1(a),

---

[1] These three counts were later dismissed on the government's motion.

with no adjustments.  The PSR then applied a multiple count adjustment, which resulted in a total offense level of 27.  Because he had prior felony convictions for robbery with a firearm and battery on a law enforcement officer, Harris qualified as a career offender under U.S.S.G. § 4B1.1.  As a result, the PSR increased his offense level to 37. It calculated his criminal history category to be VI.  The result was a guidelines range of 440 months to life imprisonment.  Under 18 U.S.C. § 3559(c), however, a defendant convicted of a serious violent felony, who has previously been convicted of a combination of two or more serious violent felonies or serious drug offenses is subject to a mandatory sentence of life imprisonment. Harris met those criteria, and the district court imposed the statutorily mandated life sentence. It also sentenced him to serve, consecutively, 57 years imprisonment for his other crimes.

Harris contends for the first time on appeal that the Supreme Court's recent decision in Alleyne prohibits a court at sentencing from considering a defendant's prior convictions if the jury has not found that the defendant committed those crimes.  He also renews the argument that he made in the district court that imposing a mandatory life sentence under 18 U.S.C. § 3559(c) is unconstitutional on separation of powers grounds.[2]

_____

[2] Harris does not challenge here, and he did not challenge in the district court, the factual accuracy of the averments contained in the § 851 notice.  He could have challenged their accuracy using the procedure provided in § 851(c), which would have required the government

4

## II.

This Court normally reviews constitutional sentencing issues de novo. See United States v. Steed, 548 F.3d 961, 978 (11th Cir. 2008). However, where a defendant fails to raise such an objection before the district court at sentencing, we review only for plain error. United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005). Because Harris raised the Alleyne argument for the first time on appeal, the proper standard of review is for plain error. Under that standard, we cannot "correct an error the defendant failed to raise in the district court" unless the defendant shows "(1) error, (2) that is plain, and (3) that affects substantial rights." Id. (quotation marks omitted). If those conditions are met, we may exercise our discretion to correct the error only if "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id.

Because Harris raised his constitutional challenge to 18 U.S.C. § 3559 and 21 U.S.C. § 851 in the district court, we will apply de novo review to that issue.

## III.

## A.

Harris first contends that the imposition of a mandatory life sentence under § 3559(c) based on prior conviction facts set out in the government's § 851

---

to prove them (or enough of them to support the enhancement) beyond a reasonable doubt to the court.

5

information is inconsistent with the United States Constitution, as interpreted by the Supreme Court in Alleyne. He relies on the statement in Alleyne that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." Alleyne, 133 S.Ct. at 2155 (citation omitted). Because "[m]andatory minimum sentences increase the penalty for a crime," the Court concluded that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." Id. It was for that reason the Court in Alleyne overruled Harris v. United States, 536 U.S. 545, 122 S.Ct. 2406 (2002), which had held that the Sixth Amendment permits judicial factfinding that increases the mandatory minimum sentence for a crime.

The Alleyne Court's decision to overrule Harris was based largely on its reading of its earlier opinion in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000). It concluded that the distinction made in Harris between facts that increase the statutory maximum and facts that increase only the mandatory minimum was "inconsistent with our decision in Apprendi." Alleyne, 133 S.Ct. at 2155. Notably, however, Apprendi itself drew a distinction between "normal" judicial factfinding and the use of prior convictions as a factual basis for sentence enhancement. The Apprendi Court held that: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed

6

statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490, 120 S.Ct. at 2362–63 (emphasis added). Nothing in the facts or holding of Alleyne indicates that it eliminated Apprendi's exception for judicial findings of prior convictions that increase a criminal penalty.

As in this case, the sentence at issue in Alleyne was for the armed robbery of a store manager. And Alleyne, like Harris, was charged with a Hobbs Act robbery under 18 U.S.C. § 1951(a) and with using or carrying a firearm to commit a crime of violence under 18 U.S.C. § 924(c)(1)(A). Alleyne, 133 S.Ct. at 2155. Section 924(c)(1)(A) provides for a minimum sentence of 5 years imprisonment for anyone who "uses or carries a firearm" in relation to a "crime of violence" and increases that mandatory minimum sentence to 7 years "if the firearm is brandished." The jury convicted Alleyne but indicated on the jury form only that he had "[u]sed or carried a firearm during and in relation to a crime of violence." Id. at 2156. The district court went further, finding that Alleyne had also brandished the firearm. The court believed, as it had every right to do under Harris, that it could make that additional finding without violating the Sixth Amendment. Id. But the Supreme Court, which had every right to overrule Harris, did so and held that the "fact of brandishing" constituted "an element of a separate, aggravated offense that must be found by the jury." Id. at 2162.

7

As this discussion indicates, <u>Alleyne</u> did not address the specific question at issue in this case, which is whether a sentence can be increased because of prior convictions without a jury finding the fact of those convictions.  That question continues to be governed by <u>Almendarez-Torres v. United States</u>, 523 U.S. 224, 226–27, 118 S.Ct. 1219, 1222 (1998), where the Court determined that the fact of a prior conviction is not an "element" that must be found by a jury.  Indeed, the <u>Alleyne</u> Court specifically recognized that, under <u>Almendarez-Torres</u>, prior convictions are excepted from the general rule that a jury must find any fact that will increase the penalty for an offense.  <u>Alleyne</u>, 133 S.Ct. at 2160 n.1.  The <u>Alleyne</u> Court declined to "revisit [<u>Almendarez-Torres</u>] for purposes of our decision today" because "the parties d[id] not contest that decision's vitality."  <u>Id.</u>; see also <u>Descamps v. United States</u>, 133 S.Ct. 2276, 2288 (2013) (observing that an increase in the maximum statutory sentence based on judicial factfinding that "went beyond merely identifying a prior conviction" would "raise serious Sixth Amendment concerns").

We recognize that there is some tension between <u>Almendarez-Torres</u> on the one hand and <u>Alleyne</u> and <u>Apprendi</u> on the other.  However, we are not free to do what the Supreme Court declined to do in <u>Alleyne</u>, which is overrule <u>Almendarez-Torres</u>. As we have said before, we are "bound to follow <u>Almendarez-Torres</u> unless and until the Supreme Court itself overrules that decision."  <u>United States v.</u>

Thomas, 242 F.3d 1029, 1035 (11th Cir. 2001).  Applying that rule to this case,

Harris' Alleyne challenge to his § 3559(c) mandatory life sentence fails.  The

district court did not commit error, much less plain error, in imposing a mandatory

life sentence under § 3559(c) without any jury findings about the existence of

Harris' prior convictions.[3]

## B.

Harris' other contention is that the combination of 18 U.S.C. § 3559(c) and

21 U.S.C. § 851, which resulted in his mandatory life sentence, violates "the

Nondelegation Doctrine, Separation of Powers principles, and the U.S.

Constitution" by impermissibly giving the executive branch "the power to

prosecute and the power to sentence."  His argument is based on the fact that the

mandatory life sentence that § 3559(c) provides is applied only if the government

chooses to file a notice of prior convictions under § 851.  Although Harris

concedes that Congress can impose mandatory minimum sentences for certain

crimes, he argues that it cannot constitutionally delegate the authority to decide

---

[3] "[T]he relevant time period for assessing whether an error is plain is at the time of appellate consideration."  United States v. McKinley, 732 F.3d 1291, 1295 (11th Cir. 2013) (quoting United States v. Bane, 720 F.3d 818, 830 (11th Cir. 2013)).  Therefore, for the purposes of Harris's direct appeal, we consider the law announced by the Supreme Court in Alleyne.  Our doing so is not intended to suggest that Alleyne applies retroactively to cases on collateral review.  Alleyne was decided in the context of a direct appeal, and the Supreme Court itself has not expressly declared Alleyne to be retroactive on collateral review.  See generally Alleyne, 133 S. Ct. at 2155-64; Tyler v. Cain, 533 U.S. 656, 662-63, 121 S. Ct. 2478, 2482 (2001).  And Alleyne has not been made retroactive through any combination of cases that necessarily dictate retroactivity.  See Tyler, 533 U.S. at 666, 121 S. Ct. at 2484 ("Multiple cases can render a new rule retroactive only if the holdings in those cases necessarily dictate retroactivity of the new rule."); In re Holladay, 331 F.3d 1169, 1172-73 (11th Cir. 2003).

whether to impose such sentences to the executive branch without providing an "intelligible principle" to constrain that branch's discretion.

We have rejected claims that mandatory minimum sentences violate the United States Constitution in general, see United States v. Holmes, 838 F.2d 1175 (11th Cir. 1988), and have held that they do not violate the separation-of-powers doctrine in particular, id. at 1178. Our decision in United States v. Cespedes, 151 F.3d 1329 (11th Cir. 1998), which involved § 851, forecloses Harris' position.

In that case, the government filed a § 851 information averring a prior conviction that had the effect of enhancing the statutory range of sentences for drug crimes punishable under 21 U.S.C. § 841(b)(1)(A) so that a range of ten years to life became a range of twenty years to life, effectively doubling the statutory minimum. See Cespedes, 151 F.3d at 1330. The defendant challenged the combination of those two statutes on separation-of-powers grounds, arguing that they gave the executive branch the power to fix statutory sentence ranges, which is more properly a legislative power. Id. at 1332. In rejecting that argument and upholding the constitutionality of the statutory scheme, we concluded that "the power of the prosecutor under § 851 is no greater than the classic power of the executive to choose between charges carrying different mandatory penalties." Id. at 1335.

10

Harris argues that Cespedes does not control the issue here because the enhancement triggered by the § 851 information the government filed in that case merely restricted the range of sentences from which the district court could choose (as opposed to requiring the court to impose a mandatory minimum sentence of life imprisonment).  His reasoning is flawed because, when it comes to separation of powers principles, there is no analytical difference between an increase that doubles the minimum term of years and one that increases the minimum from a term of years to life imprisonment.  The reasoning and holding of Cespedes applies in both circumstances.

Even if we were not convinced that Cespedes forecloses Harris' challenge, the decisions of our sister circuits addressing the constitutionality of § 3559(c) would persuade us to reach the same conclusion.  See United States v. Gonzalez, 682 F.3d 201, 203 (2d Cir. 2012) ("The authority that § 3559 delegates to prosecutors . . . does not unconstitutionally delegate the judiciary's power to the executive branch."); United States v. Gurule, 461 F.3d 1238, 1246–47 (10th Cir. 2006) (holding that § 3559 does not violate separation of powers principles); United States v. Kaluna, 192 F.3d 1188, 1199 (9th Cir. 1999) (en banc) (same); United States v. Rasco, 123 F.3d 222, 226 (5th Cir. 1997) (same); United States v. Washington, 109 F.3d 335, 338 (7th Cir. 1997) ("The prosecutor's power to pursue

11

an enhancement under § 3559(c)(1) is no more problematic than the power to choose between offenses with different maximum sentences.").

## IV.

The sentence imposed by the district court is **AFFIRMED**.